UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDGE J. PAYNE,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | Case No. EDCV 08-0470-JTL<br><br>MEMORANDUM OPINION AND ORDER |

**PROCEEDINGS**

On April 7, 2008, Judge J. Payne ("plaintiff") filed a Complaint seeking review of the Social Security Administration's denial of his application for Disability Insurance Benefits. On May 1, 2008, plaintiff filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. On August 18, 2008, Michael J. Astrue, Commissioner of Social Security ("defendant"), filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on October 14, 2008, defendant filed an Answer to the Complaint. On November 25, 2008, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///
///
///

**BACKGROUND**

In a disability determination dated October 24, 1994, plaintiff was found to be disabled as of March 1, 1994, due to attention deficit hyperactivity disorder, pursuant to his applications for Childhood Disability Benefits and Supplemental Security Income. (See Administrative Record ["AR"] at 85, 86-89). Subsequently, a continuing disability investigation was conducted and, by notice dated November 7, 2003, plaintiff was informed that he was no longer disabled as of November 1, 2003 and thus was no longer entitled to Supplemental Security Income. (See AR at 49-52, 53). Plaintiff's eligibility for benefits effectively ended January 31, 2004. (See AR at 50, 52). Plaintiff filed a request for reconsideration and his case was reviewed by a disability hearing officer. (See AR at 46-47, 37-44, 45, 91-100). In a decision dated May 14, 2004, the disability hearing officer concurred with the initial finding that plaintiff was no longer disabled. (AR at 37-44; see AR at 33-35).

Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 31). On December 1, 2004, the ALJ conducted a hearing in San Bernardino, California. (See AR at 727-52). Plaintiff appeared without counsel and testified. (AR at 729-40). Plaintiff's mother, Lovine Payne, also appeared at the hearing and testified. (AR at 740-46, 749, 750-52). In addition, Luis Mas, a vocational expert, testified at the hearing. (AR at 747-49, 749-50). On December 20, 2004, the ALJ issued his decision denying benefits to plaintiff, concluding that plaintiff's disability had ceased on November 1, 2003. (AR at 575-79). The Appeals Council granted plaintiff's timely request for review of the ALJ's decision and, on July 1, 2005, vacated the ALJ's decision. (See AR at 580-81, 585-86, 593-96). The Appeals Council remanded the matter for further proceedings to allow the ALJ to obtain additional evidence concerning plaintiff's mental impairments from plaintiff's treating physician, Jeremiah Umakanthan, M.D., and to properly evaluate plaintiff's mental impairments. (See AR at 594, 595).

Thereafter, on February 1, 2006, the ALJ conducted a second hearing in San Bernardino, California. (AR at 753-74). Plaintiff appeared with counsel and testified. (AR at 755-65). Plaintiff's mother and Troy Scott, a vocational expert, also testified at the hearing. (AR at 765-70, 770-73). On June 28, 2006, the ALJ issued a decision denying benefits to

1 plaintiff. (AR at 21-26). The ALJ incorporated by reference his prior, December 20, 2004,
2 decision. (AR at 21). In his decision, the ALJ stated that, at the time of the most recent
3 favorable medical decision finding plaintiff disabled, plaintiff suffered from attention deficit
4 hyperactivity disorder ("ADHD"), which had been found to meet an impairment listed in Section
5 112.11 of the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P,
6 Appendix 1. (AR at 23; see AR at 85). The ALJ found no documented physical impairment
7 and, thus, work was possible at any exertional level. (Id.). The ALJ determined that plaintiff
8 did not develop any additional impairments through November 1, 2003 and, thus, plaintiff
9 continued to have the same impairment that he had at the time of his most recent favorable
10 disability determination. (Id.). The ALJ further found that, as of November 1, 2003, plaintiff's
11 impairment was severe, but did not meet or equal the criteria contained in Appendix 1 of the
12 regulations. (Id.). The ALJ determined that there had been a decrease in medical severity of
13 plaintiff's impairment as of November 1, 2003, and that his medical improvement was related
14 to his ability to work. (Id.). The ALJ determined that, as of November 1, 2003, plaintiff had the
15 mental residual functional capacity to perform routine and repetitive, entry level, minimally
16 stressful work, requiring no contact with the general public and only superficial interpersonal
17 contact with co-workers and supervisors. (AR at 24-25). Although plaintiff had no past relevant
18 work, the ALJ determined that plaintiff was able to perform and successfully adjust to jobs
19 existing in significant numbers in the national economy, including the jobs of dishwasher, hand
20 packager, and food preparation worker. (AR at 25-26). Ultimately, the ALJ concluded that
21 plaintiff's disability ended as of November 1, 2003. (AR at 22, 26). After receiving additional
22 evidence from plaintiff, the Appeals Council denied plaintiff's timely request for review of the
23 ALJ's decision. (AR at 6-9).
24 Thereafter, plaintiff appealed to the United States District Court.
25 ///
26 ///
27 ///
28 ///

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims:

1. The ALJ erred in rejecting the residual mental functional capacity assessments of plaintiff's treating psychiatrist, Jeremiah Umakanthan, M.D.

2. The ALJ improperly rejected or omitted mention of the statements of lay witnesses to plaintiff's behavior.

**STANDARD OF REVIEW**

Under 42 U.S.C. Section 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**DISCUSSION**

**A.   The Sequential Evaluation**

A claimant is disabled under Title II of the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

1    The first step is to determine whether the claimant is presently engaging in substantially
2 gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging
3 in substantially gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S.
4 137, 141 (1987). Second, the ALJ must determine whether the claimant has a severe
5 impairment. Parra, 481 F.3d at 746. Third, the ALJ must determine whether the impairment
6 is listed, or equivalent to an impairment listed, in Appendix I of the regulations. Id. If the
7 impediment meets or equals one of the listed impairments, the claimant is presumptively
8 disabled. Bowen, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment
9 prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45
10 (9th Cir. 2001). If the claimant cannot perform his or her past relevant work, the ALJ proceeds
11 to the fifth step and must determine whether the impairment prevents the claimant from
12 performing any other substantially gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir.
13 2000).

14    The claimant bears the burden of proving steps one through four, consistent with the
15 general rule that at all times, the burden is on the claimant to establish his or her entitlement
16 to disability insurance benefits. Parra, 481 F.3d at 746. Once this prima facie case is
17 established by the claimant, the burden shifts to the Commissioner to show that the claimant
18 may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir.
19 2006).

20 **B.    Jeremiah Umakanthan, M.D.**

21    Plaintiff argues that the ALJ improperly rejected the opinion of his treating psychiatrist,
22 Jeremiah Umakanthan, M.D. (See Joint Stipulation at 13-17). The record contains numerous
23 records documenting the treatment plaintiff received from Dr. Umakanthan, including his
24 treatment notes from February 6, 2004 through January 5, 2006, prior to the ALJ's decision,
25 and a Psychiatric/Psychological Impairment Questionnaire Dr. Umakanthan completed on June
26 10, 2005. (See AR at 619-44, 658-65, 668-75). In the psychiatric questionnaire form, Dr.
27 Umakanthan indicated that he had seen plaintiff on a monthly basis since February 6, 2004,
28 and that he diagnosed plaintiff with ADHD, depressive disorder, alcohol abuse and cannabis

abuse. (AR at 668). Dr. Umakanthan also indicated that plaintiff had a current Global Assessment of Functioning ("GAF")[1] score of 41, his highest GAF score in the preceding year was a score of 50, and his prognosis was "poor." (Id.). In support of his diagnoses, Dr. Umakanthan cited to plaintiff's poor memory, mood disturbance, anhedonia or pervasive loss of interest, difficulty thinking or concentrating, social withdrawal or isolation and decreased energy, and noted that plaintiff had an "[i]mpaired memory." (AR at 669). Dr. Umakanthan listed plaintiff's primary symptoms as "[i]mpaired attention" and "[d]epression," and indicated that his symptoms and functional limitations were reasonably consistent with his impairments. (AR at 670). In the form, Dr. Umakanthan further indicated that plaintiff had "marked"[2] limitations in fourteen areas, including his abilities to: remember locations and work-like procedures; understand and remember one or two step instructions; understand and remember detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; sustain ordinary routine without supervision; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; and set realistic goals or make plans independently. (AR at 671-73). Dr. Umakanthan also indicated that plaintiff was "moderately limited" in his abilities to carry out detailed instructions, get along

---

[1] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting)" or "[a]ny serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th. ed, rev. 2000).

[2] "Markedly limited" is defined as "effectively precludes the individual from performing the activity in a meaningful manner." (AR at 671).

with co-workers or peers without distracting them or exhibiting behavioral extremes, and be aware of normal hazards and take normal precautions.[3]  (AR at 671, 672, 673).  Dr. Umakanthan assessed plaintiff with "mild"[4] limitations in his ability to ask simple questions or request assistance and no limitations in his ability to carry out simple one or two step instructions.  (AR at 672).  Dr. Umakanthan further opined that plaintiff experienced episodes of deterioration or decompensation in work or work-like settings which caused him to withdraw from the situation or exacerbated his symptoms, explaining that, although plaintiff had no work experience, he was unable to stay in school.  (AR at 673).  He noted that, according to plaintiff's mother, plaintiff was unable to complete any of his assigned tasks or household chores, and that he had prescribed plaintiff with Wellbutrin SR 100mg without any side effects.  (Id.).  Dr. Umakanthan further opined that plaintiff's impairment was ongoing and he expected them to last at least twelve months, plaintiff was not a malingerer, he could not tolerate even "low stress," his impairments or treatment would likely cause him to be absent from work more than three times a month, and plaintiff could not manage benefits in his own interest.  (AR at 674-75).

The ALJ, however, chose to rely on the opinions of the psychological and psychiatric consultative examiners and State Agency psychiatrists in determining plaintiff's mental residual functional capacity.  (See AR at 24-25, 577).  In particular, the ALJ credited the opinion of Jason H. Yang, M.D., the psychiatric consultative examiner who had performed a complete psychiatric evaluation of plaintiff on November 6, 2005.  (AR at 24-25; see AR at 645-52).  Based on his review of plaintiff's records, which did not include treatment notes from Dr. Umakanthan, and his meeting with plaintiff, Dr. Yang assigned plaintiff a GAF score of 68[5] and

---

[3] "Moderately limited" is defined as "significantly affects but does not totally preclude the individual's ability to perform the activity."  (AR at 670).

[4] "Mildly limited" is defined as "does not significantly affect the individual's ability to perform the activity."  (AR at 670).

[5] A GAF score between 61 and 70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia)" or "some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal
(continued...)

opined that plaintiff had no cognitive deficits, perceptual disturbances or delusional disorders, plaintiff was fairly groomed and was capable of taking care of his own needs, and could focus attention adequately, follow one and two part instructions, adequately remember and complete simple and complex tasks, tolerate the stress inherent in the work environment, maintain regular attendance, work without supervision and manage his own funds. (See AR at 24, 645-46, 648). Dr. Yang further opined that plaintiff would be able to interact appropriately with supervisors, coworkers and the public in the workplace.[6] (AR at 24-25, 648).

In the ALJ's December 20, 2004 decision, which he incorporated by reference in the June 28, 2006 decision (AR at 21), the ALJ also cited the opinion of Kim Goldman, Psy.D., who conducted a psychological evaluation of plaintiff on October 20, 2003 and concluded that plaintiff should be capable of performing a full range of routine, simple tasks in a normal work environment. (See AR at 577). Specifically, the ALJ noted Dr. Goldman's findings that plaintiff was pleasant and cooperative, effort was good, he was able to follow instructions with no problems, his affect was broad and mood eurythmic, his responses were coherent and relevant, he was alert and oriented, his immediate memory was intact but recent memory was fair, he had an IQ of 76 and appeared to be achieving at or above his capabilities according to his IQ scores, and, at worst, his intellectual functioning was in the borderline range. (AR at 577; see AR at 495-97). The ALJ also noted the opinions of Drs. K. Gregg and Skopec, the State Agency medical consultants, who concurred that plaintiff is capable of a full range of routine, simple tasks in a normal work setting. (AR at 557; see AR at 518-36, 550-51).

In support of his decision to reject Dr. Umakanthan's opinion regarding plaintiff's mental limitations, as contained in the Psychiatric/Psychological Impairment Questionnaire, the ALJ

---

[5](...continued)
relationships." Diagnostic and Statistical Manual of Mental Disorders 34.

[6] Dr. Yang also completed a Medical Source Statement of Ability to do Work-Related Activities (Mental), in which he opined that plaintiff's impairment did not affect his ability to understand, remember and carry out instructions, he had no limitations on his ability to interact appropriately with the public, but had slight limitations in his abilities to interact appropriately with supervisors and coworkers, and respond appropriately to work pressures and changes in a usual work setting. (AR at 650-51). Although plaintiff had no work experience and may need to make adjustments to new stress, Dr. Yang opined that plaintiff "may cope with the job pressures in an adequate manner." (AR at 651).

stated:

> The form from Dr. Umakanthan does not credibly establish less of a mental residual functional capacity than that found herein. This form is an example of egregious accommodation for a client and is full of exaggerated expressions of disability. The opinions expressed are completely inconsistent with his own medical records and the minimal nature of the treatment provided. Of 20 mental functions he asserts that 14 are "markedly limited" which according to the form definition means they are precluded from being performed in a "meaningful manner" – in (1) he asserts the inability to understand and remember 1-2 step instructions, yet in (4) says there is no limitation whatsoever in "The ability to carry out 1-2 step instructions." In (3) he asserts there is a complete inability to understand and remember detailed instructions, yet in (5) he says [plaintiff] is only "moderately limited" in carrying out detailed instructions, which according to the form definition means the performance is not precluded (how can one carry them out if one cannot understand or remember them?). In (10) he asserts [plaintiff] cannot make simple work related decisions, yet in (4) he admits [plaintiff] has no trouble carrying out simple, 1-2 step instructions, which requires the decision of what step comes next. It appears that the answers to (15) and (16) are inconsistent and it appears that Dr. Umakanthan gave little thought to the completion of this form. If [plaintiff] is in fact incapable of 14 of the 20 of the most elemental mental functions he should be institutionalized or put into the care of a guardian. The conclusions are rebutted by the psychological and psychiatric consultative examiners and by the opinions and rationale of the

State Agency Board certified psychiatrists.

(AR at 25).

Plaintiff argues that the reasons provided by the ALJ are insufficient to properly reject the opinion of Dr. Umakanthan, plaintiff's treating psychiatrist, regarding plaintiff's mental limitations. (Joint Stipulation at 13-17). Defendant argues that the ALJ properly analyzed the evidence in this case and properly considered and weighed Dr. Umakanthan's opinion. (Joint Stipulation at 17-21).

The medical opinion of a treating physician is entitled to special weight because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." See 20 C.F.R. § 404.1527; Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended) (the opinions of treating physicians should be given more weight than the opinions of doctors who do not treat the claimant); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). If a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it will be given controlling weight. 20 C.F.R. § 404.1527. However, a finding that a treating physician's opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques, or is not consistent with the other substantial evidence in the record, only means that the opinion is not entitled to controlling weight. Social Security Ruling ("SSR") 96-2p[7] ("A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected."). The opinions rendered by treating physicians are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. Section

---

[7] Social Security Rulings are issued by the Commissioner to clarify the Commissioner's regulations and policies. Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991). Although they do not have the force of law, they are nevertheless given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

404.1527, such as the length of the treatment relationship, frequency of examination, and the nature and extent of the treatment relationship. SSR 96-2p; 20 C.F.R. § 404.1527(d)(2).

An ALJ may properly reject the opinion of an uncontroverted treating physician only for "clear and convincing" reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. An ALJ may reject the controverted opinion of a treating physician only by providing specific and legitimate reasons for doing so that are supported by substantial evidence in the record. See Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). The ALJ can meet this burden by setting out a "detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157 F.3d at 725; Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986). More than just rendering conclusions, the ALJ must set forth interpretations and explain why his interpretations, rather than the physician's, are correct. Orn, 495 F.3d at 632; Reddick, 157 F.3d at 725; Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).

An ALJ may rely on the absence of objective findings to reject a treating physician's opinion. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (inadequate clinical findings provide clear and convincing reasons for ALJ to reject treating physician's opinion); Buckhart v. Bowen, 856 F.2d 1335, 1339 (9th Cir. 1988) (proper to disregard uncontroverted treating physician's opinion when he fails to provide objective descriptions of medical findings). In addition, an ALJ may reject all or part of an examining physician's report if it contains inconsistencies, is conclusory, or inadequately supported by clinical findings. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

Here, the ALJ provided four reasons for rejecting Dr. Umakanthan's opinion. First, the ALJ stated that Dr. Umakanthan's opinion was "an example of egregious accommodation for a client and is full of exaggerated opinions of disability," but offered no factual basis for this conclusion. (AR at 25). The ALJ's unsupported statement that Dr. Umakanthan's opinion was an "egregious accommodation" fails to meet the ALJ's burden of making findings and setting out a "detailed and thorough summary of the facts and conflicting clinical evidence" and stating

his interpretation thereof. See Reddick, 157 F.3d at 725 (the ALJ "must do more than offer his conclusions."); Cotton, 799 F.2d at 1408. Thus, it does not constitute a specific, legitimate reason to reject Dr. Umakanthan's opinion.

Second, the ALJ states that Dr. Umakanthan's expressed opinions are "completely inconsistent with his own medical records and the minimal nature of the treatment provided." (AR at 25). Although the ALJ stated, earlier in his decision, that plaintiff's medical records indicate that his sessions are "brief, usually no more than 20 min, one time a month and medication regimen is minimal" and he always appeared with his mother (AR at 24), the ALJ failed to specify which medical records and/or treatment notes are inconsistent with Dr. Umakanthan's opinion as reflected in the in the Psychiatric/Psychological Impairment Questionnaire, and how they are inconsistent.[8] Instead of providing the required detailed and thorough summary of the facts and conflicting clinical evidence, and stating his interpretation thereof, the ALJ concluded that because Dr. Umakanthan's opinions were inconsistent with his own medical records and minimal treatment regimen, Dr. Umakanthan's opinion had no effect

---

[8] In a letter dated May 11, 2004, Dr. Umakanthan reported that he had diagnosed plaintiff with ADHD (combined-type), depression and alcohol/marijuana abuse, and a February 6, 2004 evaluation of plaintiff revealed ideas of reference, impaired immediate memory and concentration, and that, although plaintiff's depression was improving, he still complained of decreased concentration and was "still irritable." (AR at 552; see AR at 641-44). Dr. Umakanthan's treatment notes from November 9, 2004 indicate that plaintiff was feeling depressed, went to school two days per week and did not want to get up in the morning to go to school, he was compliant with his medical regime with reminders from his mother, he was withdrawn, sleepy and irritable and his mood was blunted. (See AR at 634). Dr. Umakanthan's notes from plaintiff's February 2, 2005 session indicate that plaintiff had not gone to school since January 2005, but stayed home instead, his mood was depressed and he exhibited personal "dysfunction." (AR at 629). Subsequent treatment notes from March 24, 2005 indicate that plaintiff still had not gone to school since January 2005 and was experiencing depression. (AR at 628). Treatment notes dated August 24, 2005 indicate that plaintiff exhibited signs of depression and insomnia. (AR at 665). Treatment notes from October 20, 2005 indicate that plaintiff was suffering from insomnia, sleeping only for three hours, and felt sleepy during the daytime. (AR at 662). Dr. Umakanthan's January 5, 2006 treatment notes report that plaintiff was sleeping during the day, had decreased appetite and interest, decreased concentration, he was unable to complete tasks and procrastinated, he was distractable, his memory was poor, he was quiet, withdrawn, and had poor hygiene. (See AR at 660). Dr. Umakanthan indicated in a Narrative Report dated January 17, 2006 that plaintiff's prognosis was poor due to a long history of psychiatric problems, and opined that plaintiff's condition would continue to exceed 12 months in duration. (AR at 659). The ALJ did not discuss these treatment notes, which may, for example, bear on plaintiff's abilities to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance, sustain ordinary routine without supervision, and work in coordination with or proximity to others without being distracted by them.

on the ALJ's determination of plaintiff's mental residual functional capacity. (See AR at 25). The ALJ's conclusory statement does not constitute a specific and legitimate reason for rejecting Dr. Umakanthan's opinion. See Reddick, 157 F.3d at 725 (the ALJ "must do more than offer his conclusions."); Cotton, 799 F.2d at 1408.

Third, the ALJ suggests that Dr. Umakanthan's opinion as expressed in the Psychiatric/Psychological Impairment Questionnaire is internally inconsistent. (See AR at 25). Specifically, the ALJ takes issue with Dr. Umakanthan's responses that plaintiff has marked limitations in his ability to understand and remember one and two step and detailed instructions, but has no limitation in his ability to carry out those instructions. (AR at 24; see AR at 671). Indeed, in his decision, the ALJ asks, "[H]ow can one carry them out if one cannot understand or remember them?" (AR at 25). The ALJ also states that Dr. Umakanthan's opinion that plaintiff cannot make simple work-related decisions is inconsistent with his opinion that plaintiff has no problem carrying out simple, one and two step instructions, which, according to the ALJ, "requires the decision of what step comes next." (AR at 25; see 671, 672). The ALJ also states that Dr. Umakanthan's opinion that plaintiff has moderate limitation in his ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes and marked limitation in his ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness appear to be inconsistent. (See AR at 25, 672). The ALJ goes further to state that "it appears that Dr. Umakanthan gave little thought to the completion of this form." (AR at 25).

The Court agrees with plaintiff that the ALJ unreasonably equated the abilities of remembering instructions and making decisions with the ability to carry out instructions, and the ability to get along with others with the ability to maintain socially appropriate behavior in finding internal inconsistencies in Dr. Umakanthan's opinions. (See Joint Stipulation at 14-15). The ALJ offered no support for his statements. Indeed, the ALJ's finding that Dr. Umakanthan's responses on the Psychiatric/Psychological Impairment Questionnaire were inconsistent and his statement that plaintiff "should be institutionalized or put into the care of a guardian" if he suffered from marked limitations in the areas identified by Dr. Umakanthan appear to be based

on the ALJ's own opinion as to the level of mental ability required to perform each of the activities identified in the questionnaire.  (See AR at 25 ("[H]ow can one carry [instructions] out if one cannot understand them?"; the ability of carrying out simple, one to two step instructions "requires the decision of what step comes next").  See 20 C.F.R. § 404.1513(a)(1) (evidence necessary to establish a claimant's medically determinable impairments should come from "acceptable medical sources," such as a licensed physician); see also Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ who is not qualified as a medical expert must not go outside the record to make his own assessment as to the claimant's condition); Gonzalez Perez v. Sec'y of Health & Human Servs, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not "substitute his own layman's opinion for the findings and opinion of a physician"); Winters v. Barnhart, 2003 WL 22384784, at *6 (N.D. Cal. Oct. 15, 2003) ("The ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert.").  Furthermore, equating the ability to remember instructions with the ability to carry them out and the ability to get along with others with the ability to maintain socially appropriate behavior would render the questions Psychiatric/Psychological Impairment Questionnaire, and the responses thereto, superfluous.

      Moreover, as plaintiff notes, even if it appeared that Dr. Umakanthan's opinions were internally inconsistent or he "gave little thought" to completing the form, the ALJ did not attempt to recontact Dr. Umakanthan to resolve any inconsistencies or ambiguities.  Specifically, 20 C.F.R. 404.1512(e)(1), in pertinent part, states:

> We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available.  <u>We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved</u>, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

20 C.F.R. 404.1512(e)(1) (emphasis added).  If the ALJ needed to resolve inconsistencies or

obtain more specific information regarding Dr. Umakanthan's opinion as reflected in the Psychiatric/Psychological Impairment Questionnaire, the ALJ should have developed the record further. The ALJ has a duty to conduct an appropriate inquiry if the ALJ determines that it is necessary to know the basis of a treating physician's opinion. See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) ("If the ALJ thought he needed to know the basis of [the treating physician's] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them."); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 1991) (ALJ has an independent duty to fully and fairly develop the record and assure that the plaintiff's interests are considered); see also Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (the ALJ's duty to develop the record exists even when the claimant is represented by counsel). Thus, the ALJ's finding of internal inconsistencies among Dr. Umakanthan's responses is insufficient to justify disregarding his opinion of plaintiff's mental functional limitations.

Finally, the ALJ states that Dr. Umakanthan's "conclusions are rebutted by the psychological and psychiatric consultative examiners and by the opinions and rationale of the State Agency Board certified psychiatrists." (AR at 25). As plaintiff's treating psychiatrist, Dr. Umakanthan's opinion is entitled to special weight. See Orn, 495 F.3d at 631-34. As discussed above, in order to properly disregard the controverted opinion of Dr. Umakanthan, the ALJ must set forth specific and legitimate reasons for doing so that are supported by substantial evidence in the record. See Orn, 495 F.3d at 632; Connett, 340 F.3d at 874; Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) ("The ALJ may not reject the opinion of a treating physician, even if it is contradicted by the opinions of other doctors, without providing specific and legitimate reasons supported by substantial evidence in the record." (internal quotation marks omitted)). The ALJ must set forth his own interpretations and explain why they, rather than the doctor's were correct. Orn, 495 F.3d at 632; Reddick, 157 F.3d at 725; Embrey, 849 F.2d at 421-22.

Here, the ALJ fails to specify which portions of Dr. Umakanthan's opinion are rebutted by the opinions of the psychological and psychiatric consultative examiners and State Agency psychiatrists. The ALJ does not discuss Dr. Umakanthan's opinion aside from identifying some

of the responses he believed were inconsistent with each other.[9]  As discussed above, the ALJ's finding of internal inconsistencies among Dr. Umakanthan's responses is insufficient to justify rejecting his opinion of plaintiff's mental functional limitations.  Rather than providing the required detailed and thorough summary of the facts and conflicting clinical evidence, and stating his interpretation thereof, the ALJ only provided a conclusory statement that Dr. Umakanthan's opinion is rebutted by other opinions in the record.  Thus, the ALJ's statement does not constitute a specific and legitimate reason for rejecting Dr. Umakanthan's opinion regarding plaintiff's mental limitations.  See Reddick, 157 F.3d at 725 (the ALJ "must do more than offer his conclusions."); Cotton, 799 F.2d at 1408.

While other evidence in the record may well constitute substantial evidence supporting the ALJ's disability determination, the ALJ must still provide specific and legitimate reasons for rejecting Dr. Umakanthan's opinion regarding plaintiff's mental limitations.

**C.      Remand is Required to Remedy Defects in the ALJ's Decision**

The choice of whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court.  McAlister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision, and where the record should be developed more fully.  Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).

Here, the Court finds remand appropriate.  The ALJ failed to provide specific and legitimate reasons to disregard the opinion of Dr. Umakanthan.  On remand, the ALJ must fully explain the weight that he assigns to the opinion of Dr. Umakanthan.  If the ALJ rejects Dr. Umakanthan's opinion, or the opinion of any other treating physician, in favor of the opinion of another physician, the ALJ must make detailed findings setting forth specific, legitimate reasons

---

[9] For example, the ALJ does not discuss Dr. Umakanthan's opinion, which was based on plaintiff's inability to stay in school, that plaintiff experienced episodes of deterioration or decompensation in work or work-like settings which caused him to withdraw from the situation or exacerbated his symptoms, or his opinion that plaintiff's impairment or treatment would cause him to be absent from work more than three times a month.  (AR at 673, 675).  Dr. Umakanthan documented plaintiff's difficulty in going to or staying in school in his treatment notes dated November 9, 2004 (AR at 634), February 2, 2005 (AR at 629), and March 24, 2005 (AR at 628).  See supra n.8.

for doing so based on substantial evidence in the record.[10]

**ORDER**

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS this action for further administrative proceedings consistent with this Memorandum Opinion and Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: January 23, 2009

/s/
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE

---

[10] In the Joint Stipulation, plaintiff also contends that the ALJ improperly rejected or omitted mention of the statements of lay witnesses to plaintiff's behavior. As explained above, however, the ALJ's error in failing to properly consider Dr. Umakanthan's opinion constitutes sufficient reason to remand this case. Moreover, depending on the outcome of the proceedings on remand, the ALJ will have an opportunity to address plaintiff's other arguments again. In any event, the ALJ should consider all the issues raised by plaintiff in the Joint Stipulation when determining the merits of plaintiff's case on remand.